# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

**MICHAEL B. MARTISKO**,

    Petitioner,

v.                                          Civil Action No. 1:10-CV-89
                                                   Criminal Action No. 1:07-CR-104-3
                                                   (Judge Bailey)

**UNITED STATES OF AMERICA**,

    Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

### I. Introduction

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. By Local Rule, this action was referred to Magistrate Judge Seibert for submission of a proposed report and a recommendation ("R & R"). Magistrate Judge Seibert filed his R&R on June 20, 2011 [Crim. Doc. 346 / Civ. Doc. 14]. In the R&R, the magistrate judge recommended the § 2255 petition [Crim. Docs. 289 & 295 / Civ. Docs. 1 & 7] be denied and dismissed.

Pursuant to 28 U.S.C. § 636 (b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140,

150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R & R were due within fourteen (14) days of receipt of the R&R, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). By Order dated July 19, 2011 [Crim. Doc. 354], this Court extended the time by which to file objections to the R&R to September 1, 2011. Although the petitioner did not file his Objections until September 12, 2011 [Crim. Doc. 357 / Civ. Doc. 20], this Court will nevertheless review the same under a *de novo* standard of review. The remaining portions of the R&R will be reviewed for clear error.

II.     Factual and Procedural History

    A.     Defendant's Guilty Plea and Sentencing

On June 16, 2008, defendant Martisko pled guilty to Count Nine of the fifteen-count Indictment, charging him with aiding and abetting in the distribution of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2 [Crim. Doc. 169]. Subsequent to his change of plea hearing, the Honorable Judge Irene Keeley sentenced Martisko on September 10, 2008, to a term of incarceration of twenty-four (24) months, to be followed by three (3) years of supervised release [Crim. Doc. 193].

    B.     Defendant's Direct Appeal

On September 11, 2008, the petitioner filed a direct appeal to the Fourth Circuit Court of Appeals, questioning whether the district court complied with Federal Rule of Criminal Procedure 11 in accepting the petitioner's plea and questioning the

reasonableness of his sentence. The Fourth Circuit, in a *per curiam* decision, affirmed the conviction and sentence [Crim. Doc. 220]. In its finding that the district court complied with Rule 11, the Fourth Circuit found that "[o]ur review of the plea hearing transcript reveals that the district court substantially complied with Rule 11 in accepting Martisko's plea. [His] plea was knowing, voluntary, and intelligently made, with full understanding of the consequences of his plea, and the district court found sufficient factual basis for the plea." (Id. at 3). Similarly, the Fourth Circuit found no error in the imposition of sentence. "The district court properly calculated the appropriate Guidelines range of twenty-four to thirty months . . .." (Id.).

    C.    The Petition

In his instant § 2255 petition, the petitioner asserts two grounds of ineffective assistance of counsel for: (1) filing a motion for a mental competency exam on Martisko's behalf without consulting him first; and (2) being ineffective generally, both before and after he entered his plea, by failing to represent his needs, failing to adequately explain various things, by lying to him, by arguing points that prejudiced his case, and by making promises that counsel did not fulfil. The petitioner asserts two additional grounds that (1) the District Court deceived and misled him into pleading guilty by telling him his guideline range was 21-27 months, and promising him he could get out on bond after his plea; and (2) the District Court miscalculated his criminal history by double-counting one of his prior convictions.

    D.    Magistrate Judge Seibert's Report and Recommendation

The magistrate judge's Report and Recommendation [Doc. 346] rejects Grounds

One, Three and Four as well as the pre-plea claims of ineffective assistance of counsel raised in Ground Two because the petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his sentence. The R&R also recommends dismissal of the post-plea claims of ineffective assistance of counsel in Ground Two because the claim lacks merit. In so finding, the R&R thoroughly addressed the application of the two-pronged **Strickland** test to this petition and concluded that the petitioner has failed to demonstrate that his counsel rendered ineffective assistance of counsel.

III.  Petitioner's Objections to the R&R

A.  Objections One and Two

Petitioner's first and second objections to the R&R appear to argue that he did not waive his right to file a § 2255 petition regardless of entering into a plea agreement which waives in whole or in part the right to do so [Crim. Doc. 357]. Specifically, petitioner's second objection outlines the scope of sentencing appeal waivers. (Id.)(citing Criminal Resource Manual 626). Therein, common exceptions to the appellate waiver are outlined.

Petitioner's waiver of rights in the plea agreement is valid and enforceable and as such, the petitioner is barred from bringing any ineffective assistance of counsel claims that do not "call into question the validity of the plea or the § 2255 waiver itself, or do not relate to the plea agreement or the waiver . . .." **Braxton v. United States**, 358 F.Supp.2d 497, 503 (W.D. Va. 2005) (citing collected authorities). As none of petitioner's claims "call into question the validity of the plea or the § 2255 waiver itself, or do not relate to the plea agreement or the waiver," the petitioner's claims were properly considered and denied by the Magistrate Judge. See **Braxton**, 358 F.Supp.2d at 503 (citing collected authorities).

"A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea." **Tollett**, 411 U.S. at 266-67. Petitioner at no point argued that he did not know or understand the crime to which he was pleading guilty. Further, petitioner pled guilty to the crime for which he was charged; petitioner had knowledge of the charges against him; and admitted to the charges in open court after stating he understood his rights and the consequences of pleading guilty.

Additionally, at the defendant's June 16, 2008, change of plea hearing, he was asked whether he understood the plea agreement [Doc. 210 at 13]; whether he had gone over it with counsel (Id. at 23); whether he understood the appellate and post-conviction rights waiver (Id.); whether he agreed with the terms of the agreement (Id.); and whether he agreed with the factual basis of the plea as presented at the hearing (Id. at 26). He answered in the affirmative to all these questions. The Court also went over with the petitioner all the rights that he was giving up by pleading guilty. (Id. at 19-23). The defendant stated that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 27).

Petitioner also stated at the change of plea hearing that his guilty plea was not a result of any promises other than those contained in the plea agreement. (Id. at 27). Petitioner stated that his attorneys had adequately represented him and that his attorneys

5

had left nothing undone. (Id. at 30). Finally, petitioner stated that he was pleading guilty because he was in fact guilty of the crime charged. (Id. at 27).

At the end of the hearing, the Court found that the petitioner's plea was free and voluntary (Id. at 31); that petitioner understood the consequences of pleading guilty (Id.); and that the elements of Count Nine of the Indictment were established beyond a reasonable doubt (Id.). The petitioner did not object to these findings. (Id.)

Based on the reasoning above, the Court found that the petitioner's plea was free and voluntary, and that petitioner waived his right to collaterally attack his sentence. This Court has also permitted the petitioner to file his § 2255 motion and has addressed the portions that were not subject to the waiver. Accordingly, the petitioner's first two objections **[Crim. Doc. 357]** are **OVERRULED**.

B. Petitioner's Third Objection

Petitioner next contends that he was not advised that the Mandatory Detention Act would be invoked, and had he known this, he "would have never pled guilty." [Doc. 357 at 7]. The petitioner urges the Court to review the transcript of the Change of Plea Hearing which will prove there was no mention of the Mandatory Detention Act. (Id.). This Court has reviewed the above-referenced transcript and finds the following language contained therein on page 18: [Defense Counsel] "Magistrate Kaull entered an order of a temporary revocation, so there has never been a final disposition of that, and so he's – we've talked to him about that and I've talked to the Government. Now I know the Government takes the position that they can ask for mandatory revocation, I'm not so sure about that, so I guess what I'm raising with the Court is, at some later time, I don't mean to do it today,

6

aren't we entitled to some sort of final hearing on his release, at least address the issue of could he be released, although I will say this: in talking to him, we – to be honest with you, this is going to sound a little funny – we don't want to do it right now because he's finishing up his GED and he wants to get that done, so, really, we wouldn't really want to even address it until maybe the 23rd of July, so he . . . does want to stay in and take his test and get his GED."

Subsequently, on July 16, 2008, petitioner filed a Motion for Release from Custody [Crim. Doc. 169], which the Government opposed [Crim. Doc. 176]. Judge Keeley held a hearing on the Motion on August 6, 2008, and denied the Motion by Order dated August 8, 2008 [Crim. Doc. 181]. Petitioner now claims had he known that his request would be denied, he never would have entered a guilty plea. Insofar as he asserts his counsel misled him into believing he would be released on bond, this Court construes this claim as one of ineffective assistance of counsel.

To establish a claim for ineffective assistance of counsel, Martisko must demonstrate that: (1) counsel's conduct fell below an objective standard of reasonableness and (2) the petitioner was prejudiced by counsel's deficient performance. **Strickland**, 466 U.S. at 687. If a defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. **Fields v. Attorney Gen. of Maryland**, 956 F.2d 1290, 1297 (4th Cir.), *cert. denied*, 506 U.S. 885 (1992). Furthermore, of particular importance to such analyses, the Fourth Circuit has noted there exists no absolute rules in determining what is reasonable performance under **Strickland** because counsel's representation is viewed on the facts of a particular case and at the time of

counsel's conduct. See **Hunt v. Nuth**, 57 F.3d 1327, 1332 (4th Cir. 1995).

In addition to the above language of the plea colloquy, which alone convinces this Court that there could not have been any guarantees regarding the petitioner's release, the history of this case paints an even clearer picture. On November 13, 2007, the petitioner was released on bond following his execution of the Order Setting Conditions of Release. One of these conditions required petitioner to appear at all Court proceedings. Defendant failed, however, to appear for his arraignment on November 27, 2007. Then, the petitioner also failed to appear for a final pretrial conference scheduled for January 16, 2008. Subsequently, his pretrial release was revoked.

The final pretrial conference was continued to January 24, 2008. At that hearing, the petitioner gave the Court yet another reason to deny him bond when he erupted in the middle of Court screaming: "I'm tired of all you guys are doing everything you can to make it rough on me. I can't try any fucking harder. You want to treat me like an animal, I can be one." [Crim. Doc. 205 at 18]. At that time, Judge Keeley adjourned Court and remanded the petitioner to the custody of the United States Marshals Service. (Id.).

Finally, at the hearing on the Motion for Release from Custody [Crim. Doc. 206], Judge Keeley gave her reasoning for denying the motion. Simply put, the Government invoked the Mandatory Detention Act. Judge Keeley then outlined the applicable law and concluded she had no choice but to deny the Motion. (Id. at 13). When the petitioner addressed the Court about his attorneys' advice that he may still be able to be released on bond, the Court informed the petitioner that counsel were correct at that time because the Government had not yet invoked the Mandatory Detention Act and explained that the

8

Government rarely does invoke it. (Id.). "So I don't think they saw that coming, nor could they." (Id. at 14). Judge Keeley went on to explain that "I don't think that you're in a situation where you can say [counsel] didn't get it right. They knew what they knew at the time pursuant to the plea agreement and ordinarily this is not invoked." (Id.). This Court agrees. Specifically, this Court must look to counsel's representation viewed on the facts of a particular case and at the time of counsel's conduct. *See* **Hunt v. Nuth**, 57 F.3d 1327, 1332 (4th Cir. 1995). Here, defense counsel did not know at the relevant time that the Government would invoke the Mandatory Detention Act. The petitioner was put on notice at the change of plea hearing, however, that it was a possibility. Accordingly, this Court **OVERRULES** this Objection.

IV. Conclusion

Upon careful consideration of the above, it is the opinion of this Court that the Magistrate Judge's Report and Recommendation **[Crim. Doc. 346 / Civ. Doc. 14]** should be, and the same is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. As such, this Court hereby **DENIES** and **DISMISSES WITH PREJUDICE** the petitioner's § 2255 petition **[Crim. Docs. 289 & 295 / Civ. Docs. 1 & 7]**. Further, the petitioner's Objections **[Crim. Doc. 357 / Civ. Doc. 20]** are hereby **OVERRULED**. Therefore, this matter is hereby **ORDERED STRICKEN** from the active docket of this Court. The Clerk is **DIRECTED** to enter judgment in favor of the respondent.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** the petitioner a certificate of appealability, finding that he has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* petitioner.

**DATED:** May 28, 2013.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE